UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-62391-BLOOM/Valle

CATHY DAVIS,

    Plaintiff,

v.

CRUISE OPERATOR, INC.,
d/b/a BAHAMAS PARADISE CRUISE LINE, LLC,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Cruise Operator, Inc.'s ("Defendant") Motion for Summary Judgment, ECF No. [36] (the "Motion"). The Court has carefully reviewed the Motion, the record, all supporting filings,[1] the exhibits attached thereto, and is otherwise fully advised in the premises. For the reasons that follow, Defendant's Motion is granted.

---

[1] Plaintiff did not file a Response in Opposition to Defendant's Motion. Her Response was originally due by June 8, 2017. Having failed to file anything by the deadline, the Court ordered Plaintiff to file her Response no later than June 19, 2017. *See* ECF No. [37]. In the Order, Plaintiff was warned that "[f]ailure to respond by the above deadline may result in Defendant's Motion being granted without further notice." *Id.* As of the date of this Order, Plaintiff has yet to file a Response to the Motion. The Court also notes that, according to Defendant's Certificate of Service, Defendants served Plaintiff with the Motion via U.S. mail and via e-mail. *See* ECF No. [36] at 18. In addition, the Clerk of Court separately delivered notice of these filings via U.S. mail at Plaintiff's address of record. Therefore, Plaintiff's failure to respond is not due to lack of notice. The Court also issued an Order Providing Instructions to *Pro Se* Litigants in which Plaintiff was informed that, if she wishes to oppose a motion, she must do so in writing within the time periods provided by the rules of procedure. *See* ECF No. [35] at 2. Plaintiff was amply aware of the requirement to file a timely response – a response that was due more than four weeks ago - and she chose to forego that opportunity.

## I. BACKGROUND[2]

This case involves allegations of negligence against Defendant arising from Plaintiff's contraction of Norwalk Virus/Norovirus ("Norovirus") as a result of food contamination and unsanitary conditions on board a cruise ship. *See* ECF No. [5]. From October 9 through October 11, 2015, Plaintiff was a passenger on board the Grand Celebration. *See* ECF No. [36-1] at 55, 56, and 79.[3] Prior to boarding the ship, Plaintiff and her sister visited their mother in Lake City, Florida where Plaintiff ate eggs, grits, toast and coffee at her mother's house. *Id.* at 58-59. She then traveled by car with her sister to meet her husband at their home in DeBary, Florida before continuing to West Palm Beach to board the cruise ship. *Id.* at 58. During the drive from Lake City to DeBary, Plaintiff stopped at McDonald's where she drank an iced tea. *Id.* at 57-58. Thereafter, while picking up her husband, Plaintiff packed Powerade, ice, ham, bread, and potato chips for the drive to West Palm Beach. *Id.* at 59-60. During the drive, Plaintiff again stopped at McDonald's where she purchased and drank another iced tea. *Id.* at 61-62. She also stopped to refuel and, while doing so, she used the "little mom and pop" gas station restroom. *Id.* at 61-63. After checking into a hotel room for the night, Plaintiff ate at Denny's with her husband and sister, but could not recall what she ate. *Id.* at 67-68.

On the next day, Plaintiff checked in at the port and, in doing so, she used a pen provided at the desk but did not sanitize it. *Id.* at 82. She then checked into her room, walked around the ship, took pictures, and went to the buffet where she ate several types of fruit and salad. *Id.* at 82-83. After eating, Plaintiff changed and visited the pool area where she drank a rum and coke. *Id.* at 93.

---

[2] Local Rule 56.1(b) provides that "[a]ll material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." *See* S.D. Fla. L.R. 56.1(b). To date, Plaintiff has not responded or otherwise controverted Defendant's Statement of Material Facts. Thus, to the extent that record evidence supports Defendant's Statement of Material Facts, these facts are deemed admitted and are undisputed.

[3] The pinpoint citations refer to the page of the applicable deposition transcript, not the CM/ECF page number.

On the following morning, Plaintiff had a breakfast consisting of Jell-O, watermelon, kiwi, cantaloupe, and strawberry. *Id.* at 99-100. Plaintiff and her husband then disembarked in the Bahamas to participate in a shore excursion, but she could not recall whether she used the handrail on the gangway during the disembarkation process. *Id.* at 106. While travelling by bus to the excursion, Plaintiff used the railings on the tour bus but did not sanitize them before touching them. *Id.* at 111. Upon her arrival at the excursion, it was determined that Plaintiff and her husband should not participate. *Id.* They were placed on a different bus for their return to the ship and Plaintiff recalled using the handrails on that bus. *Id.* at 110. After returning to the ship, Plaintiff ate soup and Jell-O for lunch, continuing to drink four liters of Powerade a day. *Id.* at 113-114. Plaintiff felt nauseous as she ate. *Id.* at 114-116. Later, Plaintiff and her husband walked around the ship and she played the slot machines in the casino. *Id.* at 92.

On the next day, after returning to the Port of Palm Beach, Plaintiff disembarked and traveled toward her house in DeBary, stopping three times along the route. *Id.* at 127. She then travelled from DeBary to Daytona Beach for a "Sister Day" at Ormond by the Sea. *Id.* at 128. Plaintiff and her sister stayed the night in Ormond by the Sea and drank Gatorade and juice that night. *Id.* at 128-129. Plaintiff ate oatmeal on the following morning. *Id.* at 129-130. Although Plaintiff testified she was vomiting during this timeframe, she did not see a doctor. *Id.* at 135-137. Her symptoms of vomiting and diarrhea continued over the next two days until she collapsed on the morning of October 15, 2015. *Id.* Her husband then drove her to the emergency room where she remained hospitalized until October 21, 2015. *Id.* at 137 and 144. During her hospitalization, Plaintiff underwent laboratory tests, which were negative for Norovirus or other infection. *Id.* at 145; ECF No. [36-2].

Since Grand Celebration began its service on February 3, 2015, there have been no reports of Norovirus or other gastrointestinal illness. *See* ECF No. [36-3]. During this timeframe, approximately 30,500 passengers and crew members have sailed on the ship. *Id.* All crew members

3

on board the Grand Celebration must abide by the hand-washing guidelines promulgated by the Centers for Disease Control and Prevention ("CDC"), including rubbing their hands together for twenty seconds with soap and water before preparing food. *Id.* To further ensure food safety, whole fruits for buffets undergo a micro-chlorine solution at a washing station before being placed on the buffet lines. *Id.* Defendant also sends a Gastrointestinal Illness Confirmation Report to the CDC's Maritime Illness and Death Reporting System ("MIDRS") after each sailing and no reports of gastrointestinal illness have been logged with the CDC's MIDRS since the vessel began sailing. *Id.* Every food outlet on the ship strictly adheres to the Food and Drug Administration's ("FDA") Hazard Analysis Critical Control Point ("HACCP") standards for food, temperature, and time control. *Id.* The United States Public Health Department ("USPHD") also performs two yearly inspections on the ship with the most recent pre-incident inspection occurring one month before Plaintiff's voyage, on September 5, 2015, scoring 98 out of 100 possible points. *Id.*

In the Amended Complaint, Plaintiff sued Defendant for negligence arising from her alleged contraction of Norovirus while on the Grand Celebration. *See* ECF No. [5]. Plaintiff alleges that Defendant owed her a duty to serve uncontaminated food and to sanitize and disinfect the Grand Celebration to prevent an outbreak of Norovirus or other infectious disease. *Id.* The Amended Complaint alleges that Defendant breached that duty by: (a) failing to properly sanitize and/or disinfect the ship; (b) serving contaminated food; (c) failing to serve uncontaminated food; (d) failing to practice safe and sanitary food practices; (e) failing to properly eradicate the virus thought to be Norovirus or some other virus-causing illness; (f) failing to take adequate steps to prevent an outbreak of Norovirus or other infectious diseases when it knew or should have known that such outbreaks occurred on prior voyages; (g) failing to warn passengers of the dangers and risks of Norovirus or other infectious diseases; (h) failing to timely diagnose Norovirus and or other infectious diseases; (i) failing to perform testing on ill passengers to confirm the type and nature of the virus; (j) failing to have adequate policies and procedures in place to manage and contain the

outbreak and spread of Norovirus or other infectious diseases; (k) failing to provide a sanitary vessel and food to prevent outbreaks of infectious disease; and (l) failing to take adequate steps to contain the spread of Norovirus and/or other infectious diseases, which it knew or should have known could cause other dangerous medical conditions. *Id.* Defendant has since moved for summary judgment on all claims pled in the Amended Complaint. *See* ECF No. [36]. Although the Court has given Plaintiff ample opportunity to respond, Plaintiff has not done so to date and has not otherwise sought an extension of time to do so. The Motion is now ripe for adjudication.

## II.     LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, a court cannot grant summary judgment unless it is satisfied that all of the evidence on the record supports the uncontroverted material facts that the movant has proposed. *See Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

**III.    DISCUSSION**

In support of summary judgment, Defendant advances three arguments: (1) Plaintiff cannot prove that Defendant acted negligently, (2) Plaintiff cannot prove she contracted Norovirus, and (3) even if she can prove that she contracted this virus, she cannot prove she contracted it on the Grand Celebration. The Court agrees with all three.

### A.     Negligence

Federal maritime law governs torts occurring on navigable waters. *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990); *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236 (S.D. Fla. Nov. 20, 2006). "When neither a uniform statutory or judicially-created maritime rule provides an answer to a specific legal question, a court may apply state law, as long as application of the state law does not frustrate national interest in having uniformity in admiralty law." *Jackson v. Carnival Cruise Lines, Inc.*, 203 F. Supp. 2d 1367, 1373 (S.D. Fla. May 21, 2002). In a negligence action, a plaintiff must prove that the defendant owed a duty, the defendant breached that duty, the breach was the proximate cause of the injury, and the plaintiff suffered damages. *Isbell*, 462 F. Supp. 2d at 1236. These elements are each essential to the negligence claim and a plaintiff cannot resort to allegations to defeat summary judgment on any of the elements. *Id.*

Under maritime law, a shipowner owes its passengers the duty to exercise reasonable care under the circumstances. *Id.* The "'benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have actual or constructive notice of the risk-creating condition.'" *Everett*, 912 F.2d at 1358 (quoting *Keefe v. Bahama Cruise Line*, 867 F.2d 1318, 1320-21 (11th Cir. 1989)) (rejecting argument that a ship owner should have known there was a risk of injury simply because it owned and operated the ship and finding that such a circular argument would defeat the limitation on shipowner liability explained in *Keefe*); *see also Isbell*, 462 F. Supp. 2d at 1237-38 (granting summary judgment in favor of cruise ship owner when the plaintiff did not provide any evidence of a dangerous condition on the excursion or any evidence that the defendant had constructive notice of the alleged danger).

It is undisputed that Defendant had neither actual nor constructive notice of an alleged dangerous condition on board the ship (i.e. the presence of Norovirus). Defendant has presented unrebutted evidence demonstrating that, since the Grand Celebration began its service on February 3, 2015, there have been no reports of Norovirus or other gastrointestinal illness on the ship. *See* ECF No. [36-3]. Defendant submits a Gastrointestinal Illness Confirmation Report to the CDC's MIDRS after each sailing, yet no reports of gastrointestinal illness have been logged since the vessel's maiden voyage. *Id.* In the Amended Complaint, Plaintiff alleges that Defendant "fail[ed] to take adequate steps to prevent an outbreak of the Norovirus or other infectious diseases when it knew or should have known that such outbreaks occurred on prior voyages," "fail[ed] to warn passengers of the dangers and risks of the Norovirus or other infectious diseases," "fail[ed] to perform testing on ill passengers to confirm the type and nature of the virus," fail[ed] to have adequate policies and procedures in place to manage and contain the outbreak and spread of Norovirus or other infectious diseases," and "fail[ed] to take adequate steps to contain the spread of the Norovirus and/or other infectious diseases, which it knew or should have known could cause other dangerous medical conditions." *See* ECF No. [5]. Each of these assume the existence of a prior Norovirus outbreak on board the ship. However, Plaintiff has not submitted any evidence to demonstrate that the Grand Celebration had any previous outbreaks of Norovirus or another gastrointestinal disease so as to trigger a duty to prevent subsequent outbreaks, to warn passengers of such outbreaks, or create policies that would contain the spread of the virus. In addition, these allegations presuppose that Norovirus was, in fact, present on the ship – another fact that Plaintiff failed to prove as further discussed below.

The Amended Complaint also alleges that Defendant was negligent in several others respects – none of which are supported by the record. For example, Plaintiff alleges Defendant was

negligent by "failing to properly sanitize and/or disinfect the ship," "failing to practice safe and sanitary food practices," and "failing to provide a sanitary vessel and food to prevent outbreaks of infectious disease." *See* ECF No. [5]. Defendant, however, has presented undisputed evidence of its food safety and sanitary practices. For example, every food provider on the ship strictly adheres to the FDA's HACCP standards for food, temperature, and time control and the USPHD performs two yearly inspections on the Grand Celebration. *See* ECF No. [36-3]. One of those inspections occurred one month before Plaintiff's voyage and the ship received a score of 98 out of 100 possible points. *Id.* All crew members on board the Grand Celebration are also required to abide by the hand-washing guidelines promulgated by the CDC, including rubbing their hands together for twenty seconds with soap and water before preparing food, and all whole fruits available in the ship's buffet stations undergo a micro-chlorine solution at a washing station. *Id.* The Court finds that Defendant satisfied its initial burden on summary judgment to demonstrate that it followed appropriate sanitary and food safety standards, thereby shifting the burden to Plaintiff to come forward with evidence in support of her claims. Plaintiff has presented no evidence whatsoever, requiring entry of summary judgment in favor of Defendant on these claims.

Finally, Plaintiff alleges that Defendant negligently "serv[ed] contaminated food" and "fail[ed] to serve uncontaminated food," but the record is devoid of any proof that the food Plaintiff consumed on board the Grand Celebration was indeed contaminated. In fact, Plaintiff has not come forward with any evidence, let alone medical evidence, to support her claim that she contracted Norovirus. Defendant submitted copies of Plaintiff's laboratory tests from her hospitalization at Central Florida Regional Hospital following her voyage on the Grand Celebration. *See* ECF No. [36-2]. The Discharge Summary Report indicates that Plaintiff was

tested for Norovirus GI and Norovirus GII on October 16, 2015 and the results were negative. *Id.* at 7. The burden, therefore, shifted to Plaintiff to produce evidence, going beyond the pleadings, to suggest that a reasonable jury could find that she contracted this gastrointestinal disease. Despite this, Plaintiff failed to present any medical records, affidavits, or deposition testimony from any treating physicians or experts diagnosing her with this illness. *See Hubbert v. Carnival Corp.*, No. 12-23829-CIV, 2013 WL 4806908, *2 (S.D. Fla. Sept. 9, 2013) (granting summary judgment in favor of cruise line when the plaintiffs "failed to provide the Court with any evidence, other than their own conclusory assertions, that they actually suffered any gastrointestinal illnesses").

### B. Proximate Cause

Even if the record contained such proof, Plaintiff has not submitted any evidence to demonstrate she contracted the virus while on board the Grand Celebration. *Id.* ("Even if Plaintiffs did suffer gastrointestinal illnesses during their cruise, however, to defeat Defendant's Motion, they must offer competent evidence that the actions or inaction of the Defendant caused their injuries"). "It is well settled that each element, including causation, is essential to Plaintiff's negligence claim for purposes of defeating summary judgment." *Isbell*, 462 F. Supp. 2d at 1238. Numerous courts within this district have granted summary judgment under maritime law when the plaintiff failed to prove the essential element of proximate cause. *See Hubbert*, 2013 WL 4806908 at *3 ("Because the record is devoid of any evidence that Defendant caused Plaintiff's alleged illnesses, Defendant is entitled to summary judgment"); *Isbell*, 462 F. Supp. 2d at 1238 (granting summary judgment in favor of the cruise line when there was no testimony or evidence, other than the plaintiff's personal opinion, that the damages resulted from a snake bite during a shore excursion); *John Morrell & Co. v. Royal Caribbean Cruises, Ltd.*,

10

534 F. Supp. 2d 1345, 1353 (S.D. Fla. Feb. 8, 2008) (entering summary judgment for the defendant when the plaintiff did not offer any evidence to demonstrate that a warning would have impacted his decision to participate in the shore excursion); *Jackson v. Carnival Cruise Lines, Inc.*, 203 F. Supp. 2d 1367, 1378 (S.D. Fla. May 21, 2002) (granting summary judgment in favor of cruise line when there was no evidence to prove the plaintiff became ill as a result of the food and explaining that "the court will not make a cruise line an absolute guarantor of its passengers' safety").

Here, Plaintiff likewise failed to demonstrate a proximal connection between the food she consumed on the Grand Celebration and the alleged Norovirus infection. It is undisputed that in the days leading up to her vomiting and diarrhea, Plaintiff consumed food and beverages at numerous locations other than the Grand Celebration, such as McDonald's, Denny's, her mother's house, and even food she packed from her own house. In addition, Plaintiff admitted that she came into contact with numerous public surfaces and objects, such as hand rails, pens, table tops, hotel rooms, restrooms, etc. in the days leading up to her symptoms. There is no evidence linking Plaintiff's alleged gastrointestinal illness to her consumption of food on board the Grand Celebration as opposed to another possible source, such as the other food outlets or other public surfaces with which she came into contact. For example, there is no expert deposition testimony or affidavits connecting the timing of Plaintiff's food or beverage consumption on the Grand Celebration to the onset of her symptoms. Even in the absence of such expert testimony, there is no evidence that other passengers on board the same voyage on the Grand Celebration suffered from a gastrointestinal illness to create an issue of fact on proximate cause. Without any supporting evidence, Plaintiff's bare allegations amount to speculation and do not satisfy this necessary element of her claim. Because Plaintiff failed to

offer any evidence whatsoever in support of proximate cause, the Court finds that her negligence claim fails on this basis as well. *Isbell*, 462 F. Supp. 2d at 12378 ("Plaintiff's failure to prove an essential element necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment").

## IV.   CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment, **ECF No. [36]**, is **GRANTED**. To the extent not otherwise disposed of, all pending motions are **DENIED** as moot. Final Judgment will be entered by separate order.

**DONE AND ORDERED** in Miami, Florida this 18th day of July, 2017.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Cathy Davis
6335 South Sunrise Valley Drive
Tucson, AZ 85706
PRO SE